United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY BERNSTINE,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>    Defendant.<br>_____/ | No. C-05-3397 EMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**(Docket Nos. 13, 16)** |

On September 20, 2002, Randy Bernstine applied for Supplemental Security Income ("SSI") based on disability under Title XVI of the Social Security Act ("Act"). Plaintiff alleged that his disability was based on chronic pain resulting from a low back impairment and mental impairments associated with depression. His application was denied. Plaintiff has exhausted all of his administrative remedies. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff moved for summary judgment or, in the alternative, a remand for additional proceedings. The Commissioner cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including the administrative record, and good cause appearing therefor, the Court hereby **GRANTS IN PART** Plaintiff's motion for summary judgment, **DENIES** Defendant's motion, and **REMANDS** the case for further proceedings consistent with this order.

## I. FACTS

Plaintiff was born on September 11, 1960 and is now 45 years old. (Tr. 57). He has a high school education and past work experience as a taxi and tow truck driver, a laborer, and an in-home care provider. (Tr. 69, 74). Plaintiff's alleged onset of disability is November 6, 1995, and he continued to work for Petro Plus as truck driver for 50 hours per week until a car accident on November 9, 1999. (Tr. 201). Treating neurosurgeon, Roger Shortz, M.D., diagnosed Plaintiff with lumbar strain in October 2000 and assessed that he would be precluded only from heavy lifting. (Tr. 144, 155). There was also an assessment from Dr. Pang that precluded very heavy lifting. (Tr. 188).

Treating physician, Dr. Cabayan, consistently diagnosed Thoracic Outlet Syndrome and Acute Cervical sprain along with the lumbar region sprain (Tr. 180, 190). During that assessment period, Plaintiff trained to be a driver and planned to start looking for a job. (Tr. 187). In April 2001, Dr. Cabayan assessed that Plaintiff would be precluded from heavy lifting, considering his subjective complaints of occasional slight pain, stiffness and weather effects. (Tr. 189). Consultative orthopedist, Lara Salamacha, M.D., examined Plaintiff in December 2002 and diagnosed musculoskeletal pain. (Tr. 103). Dr. Salamacha assessed that Plaintiff could lift 20 pounds frequently secondary to his muscoloskeletal low back pain, stand and walk for two hours in the morning and two (2) hours in the afternoon in segments of 15 to 20 minutes, and needed to change positions every 30 to 60 minutes. *Id.*

In July 2003, treating physician, Edward Smyth, M.D., filled out a residual functioning capacity questionnaire which diagnosed Plaintiff with chronic back pain and identified depression as a psychological factor affecting his physical condition. (Tr. 218-23). Dr. Smyth found that in a competitive work station, Plaintiff would have to shift positions and take breaks two times per hour, could lift up to 10 pounds frequently and 20 pounds occasionally, and could bend and stoop 5% of the working day. (Tr. 221-22). This report also contained many quoted statements obtained from Plaintiff concerning his condition. *Id.* On November 10, 2004, Dr. Cabayan completed a medical assessment form which made findings regarding pain, limitation of motion in the spine, and identified functional limitations (can occasionally lift 10 pounds, can engage in prolonged standing, walking, or sitting 10 minutes at one time). (Tr. 293-94).

## II.   PROCEDURAL BACKGROUND

On September 20, 2002, Plaintiff applied for SSI benefits, alleging disability due to chronic back pain and depression. (Tr. 57-60). His application was denied initially on January 31, 2003 and upon reconsideration on May 15, 2003. (Tr. 40, 45). Plaintiff then filed a request for an administrative hearing before an ALJ on May 19, 2003. (Tr. 49-50). A hearing was held on December 11, 2003 and an ALJ issued a decision on February 3, 2004 holding that Plaintiff was not disabled under the Act. (Tr. 234). Plaintiff requested a review of the decision by the Appeals Council. Pursuant to the Regulations at 20 C.F.R. 416.1477, the Appeals Council vacated the prior hearing decision and remanded the case for further proceedings and a new decision. In its October 6, 2004 Order, the Appeals Council directed that an ALJ hold a new hearing and address the treating and examining source opinions and explain the weight given these opinions, obtain additional evidence concerning the claimant's alleged depression, evaluate the claimant's mental impairment, and if warranted by the record, obtain vocational testimony. (Tr. 261-264).

On January 18, 2005, the ALJ held a new hearing and issued a decision on March 16, 2005 which again denied Plaintiff's application. (Tr. 27). Plaintiff appealed again and, in June 2005, the Appeals Council denied review and stated the ALJ's "decision is the final decision of the Commissioner." (Tr. 6-8). In making his last determination, the ALJ went through the five-step sequential evaluation process for disability required under 20 C.F.R. §§ 404.1520 and 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

3

In the instant case, the ALJ stated that, at the first step, there was no evidence that Plaintiff had performed substantial gainful activity since filing for SSI payments on September 20, 2002. (Tr. 28). At the second step, the ALJ considered the evidence regarding Plaintiff's obesity, drug and alcohol use, depression, capability to interact with other people, and concluded that his condition only presented "mild limitations" on his daily activities. (Tr. 30). He also found that Plaintiff had a medically determinable "severe" musculoskeletal thoracolumbar pain, but concluded that Plaintiff's depression was a "non-severe medically determinable impairment." (Tr. 29-30). At the third step, the ALJ found that Plaintiff did not meet the requirements of any medical condition described in the Social Security Administration's Listings for a presumption of disability. (Tr. 31). At the fourth step, the ALJ stated, "While I do not find the claimant cannot return to his past relevant work [as a taxi driver] due to a medically determinable impairment, neither do I exclude it." (Tr. 34). Finally, at step five, the ALJ held that Plaintiff had a residual functioning capacity ("RFC") for light work which, considered along with certain vocational factors, led to a direct finding that Plaintiff was "not disabled" pursuant to Rule 202.20 and 202.21 of the Medical Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id.*

In addition, the ALJ found that Plaintiff's allegations regarding his symptoms and functional limitations were generally not credible for various reasons. (Tr. 35). The ALJ found that Plaintiff's protestations regarding his extraordinary pain were not supported by the record. (Tr. 33). The ALJ further observed that his testimony was "somewhat evasive," "litigious," filled with excess self-pity and exaggeration. *Id.* He noted that Plaintiff's credibility was further eroded by his failure to include in the record earnings acquired as a taxi driver over eleven years as well as his withholding of information regarding a car accident claim in April 2001, an incident which may have resulted in injuries that contributed to his alleged functional limitations. *Id.* The ALJ further noted the Plaintiff has "systematically avoided drug testing." *Id.* The ALJ noted as well other inconsistencies in the Plaintiff's testimony (such as whether he attended special education classes (Tr. 28)).

Plaintiff argues that the ALJ's decision was erroneous for several reasons, specifically: (1) there was not substantial evidence to support the ALJ's finding that depression was not a "severe" impairment; (2) the ALJ improperly rejected the opinion of a treating physician about the

4

Plaintiff's physical limits; (3) the ALJ improperly rejected other medical evidence regarding Plaintiff's residual functioning capacity; and (4) the ALJ improperly discredited Plaintiff's symptom-reporting.

### III. DISCUSSION

A.  Legal Standard

The district court may disturb the final decision of the Social Security Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Despite the Plaintiff's protests against using the "rational interpretation" standard (*see* Pl's Reply 1:18-28, 2:1-19 (March 20, 2006)), such a deferential standard is appropriate as it has been consistently used by the courts for the purposes of judicial review of SSI disability disputes. *See, e.g., Chong Yang v. Apfel*, 2000 U.S. Dist. LEXIS 4184 at *10 (N.D. Cal., March 22, 2000); *Hanson v. Apfel*, 1998 U.S. Dist. LEXIS 20229 at *6 (N.D. Cal., Dec. 18, 1998).

B.  Depression as a "Severe Impairment"

Plaintiff argues that the ALJ's finding that his diagnosed depression was not a "severe impairment" was not supported by substantial evidence. Pl.'s Mot. for Summary Judgment 4:4-5 (Jan. 30, 2006). Specifically, he asserts that psychiatric evaluations performed in June 2003 and November 2004 at Kaiser and Richmond Mental Health Center, respectively, as well as medical assessments made by two treating doctors in July 2003 and March 2004, indicated that the diagnosed depression was a medical condition that seriously affected Plaintiff's functioning. *Id.* at

1   4:6-20.  Plaintiff argues this medical evidence is consistent with a chronic impairment that is

2   "severe."  *Id.* at 4:21-23.  In addition, Plaintiff alleges that, since each step of the five-step sequential

3   evaluation process for disability depends on the accuracy of the preceding step, the ALJ's improper

4   finding of a mental impairment that was not "severe" at Step 2 negatively affected the assessment of

5   the RFC at Steps 4 and 5.  *Id.* at 5:12-21.  As such, he challenges the "accuracy and propriety" of the

6   RFC assessment as it did not take into account a correct finding of the mental functioning capacity

7   and therefore the true cumulative effects of all the impairments.  *Id.*

8     Defendant counters that the ALJ's finding that Plaintiff's mental impairments only caused

9   mild limitations was reasonable and supported by substantial evidence.  Def.'s Opp. and Mot. for

10  Summary Judgment 4:6-7 (Feb. 28, 2006).  Although Plaintiff was diagnosed with depression,

11  Defendant argues that there was no evidence that such an impairment was so significant as to

12  establish a "severe" impairment or a disability.  *Id.* at 3:9-18.  Defendant contends the mental status

13  examinations do not establish significant cognitive deficits or that they significantly limit his ability

14  to do basic work activities.  *Id.*  Defendant points to the ALJ's note that Plaintiff did not provide

15  records showing alleged mental health counseling nor that he was taking any medication for his

16  depression.  *Id.* at 3:19-21.  In fact, Defendant observes that the June 2003 mental evaluation from

17  Kaiser upon which Plaintiff relies in fact showed Plaintiff's speech, thought processes, thought

18  content, and insight were normal.  *Id.* at 2:27-28.  The ALJ also observed that Plaintiff appeared

19  articulate and attentive at his hearing, and was capable of pursuing his own self-interests.  *Id.* at

20  3:25-28.

21    In response, Plaintiff argues that looking at cognitive deficits is only one part of the mental

22  evaluation and the ALJ ignored competent medical evidence from the June 2003 exam which

23  showed that he had serious limitations in global functioning.  Pl.'s Reply 4:1-10, 3:10-11.

24    Under the Social Security Regulations, a "severe" impairment is defined in the negative:

25  "An impairment or combination of impairments is not severe if it does not significantly limit your

26  physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  "Basic work

27  activities" is further defined as

28

6

> 1  the abilities and aptitudes necessary to do most jobs.  Examples of these include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.* § 416.921(b).  Plaintiff has the burden of establishing the existence of a severe impairment. *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998).

The finding that Plaintiff suffered from depression does not necessarily lead to the conclusion that the claimant was disabled.  Instead, the analysis hinges on whether an impairment is so significant as to be "severe."  *See* 20 C.F.R. §§ 404.1520 and 416.920.  However, the Court holds that the ALJ's finding that the depression was not a "severe" impairment was supported by substantial evidence.  The ALJ observed that the June 2003 doctor had rated Plaintiff's global functioning at 50, which indicated severe impairment and difficulty functioning.  (Tr. 29, 227). However, there is other substantiated evidence in the record indicating Plaintiff's depression was not a "severe" impairment.

First, as the ALJ found attention, concentration, memory and fund of knowledge were not formally tested; speech, thought process, thought control, and insight were within normal limits. (Tr. 228-29).  Impulse control and judgment were noted as limited.  *Id.*  There were no notes indicating what modalities were utilized to read these conclusions.  *Id.*  There is no indicating that the examining physician, Dr. Botello, was a treating physician at least for any length of time as the Kaiser records were generated on a single day, June 27, 2003.  *Id.*  Plaintiff points to no other medical record of treatment by Dr. Botello.  *See Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2005) quoting 20 C.F.R. § 404.1502 (defining treating source a physician that has had or has an "ongoing treatment relationship with you" who is seen with "a frequency consistent with accepted medical practice").

Second, there was no evidence in the record that Plaintiff ever received therapy or medical treatment for his depression, suggesting that his mental condition was not as severe as he claimed. *Id.*  Third, as the ALJ found, the fact that Plaintiff could find shelter and succor with family and friends, frequently interacted with women (he fathered seven children), and had driven a taxi as an

independent lessee driver (*Id.* at 29-30), indicated that Plaintiff could successfully interact with other people and therefore had substantial mental functioning capabilities. *Id.* Moreover, the ALJ observed at the hearing that the Plaintiff was able to remain focused, was able to respond promptly to questions, and spoke at normal pace. (Tr. 32-33).

The other indications of the severity of Plaintiff's depression cited in his brief (4:6-20) are not compelling. The November 2004 evaluation notes at the Richmond Mental Health Center made only passing reference to Plaintiff's depression. (Tr. 339). There is more detailed discussion of his substance abuse: Plaintiff was on methadone, vicodin, valium, THC (daily) and crack cocaine (Tr. 338). The evaluation concluded Plaintiff would be referred to substance abuse group (Tr. 339). While his treating physician, Dr. Smyth, indicated Plaintiff suffers from depression, Dr. Smyth is not a psychiatrist and has not provided psychiatric treatment to Plaintiff. (Tr. 219).[1] Nor did Dr. Smyth assess the degree to which Plaintiff's depression impairs his basic work activities. Similarly, the March 2004 treatment record from the Richmond Health Center is cursory and offers no assessment of the severity of Plaintiff's depression and its impact on his working ability.

In sum, there is substantial evidence supporting the ALJ's finding that even though Plaintiff has been diagnosed with depression, the depression did not significantly limit his ability to perform basic work activities. *See* 20 C.F.R. § 416.921(b).

C.   <u>Opinion of Treating Physician, Dr. Cabayan, about Plaintiff's Physical Limits</u>

Plaintiff also contends that, in determining the RFC, the ALJ improperly disregarded the opinion of Dr. Cabayan, a treating physician, who had reported in November 2004 that Plaintiff had several limitations that would preclude him from doing "light work" as defined under 20 C.F.R. § 416.967.[2] Pl.'s Mot. for Summary Judgment 6:8-13, 7:1-4. In particular, Dr. Cabayan's prescribed

---

[1] *Cf. Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (treating physician who is not a board-certified psychiatrist entitled to deference where he/she provided treatment for the claimant's psychological impairment).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are

limitations included occasional lifting of no more than ten pounds, a need to change positions between sitting and standing every ten minutes, and even when changing positions, an inability to work a full-time schedule alternating sitting/standing throughout an eight-hour work day. (Tr. 294). These limitations were in direct contrast to those reported by Dr. Salamacha, a consultative orthopedist, who concluded that Plaintiff could frequently lift 20 pounds, needed to change positions every 30 to 60 minutes, and could stand and walk for two hours in the morning and afternoon in segments of 15 to 20 minutes. (Tr. 32, 103). Dr. Cabayan's limitations were also more restrictive than those found in Dr. Smyth's evaluation in July 2003, which concluded that Plaintiff could occasionally lift 20 pounds and could work with breaks twice an hour. (Tr. 221).

Defendant counters that Dr. Cabayan's report could have been discredited for several reasons: First, the ALJ is not obligated to discuss every piece of evidence in the record and is only required to explain why probative evidence has been rejected. Def.'s Opp. 4:22-27. Second, Dr. Cabayan's medical assessment was similar to Dr. Smyth's report, which was rejected by the ALJ as being tainted by Plaintiff's subjectivity and, as such, one could infer that the ALJ must have also determined that Dr. Cabayan's assessment was based on subjective medical evidence and was therefore unreliable. *Id.* at 5:1-16. Third, Defendant argues that there is no evidence that Dr. Cabayan was Plaintiff's treating physician during the November 2004 exam. *Id.* at 5:18-23. Fourth, Defendant also contends, in the alternative, even if the ALJ discredited Dr. Cabayan's report in error, this error was harmless since it did not impact the "ultimate issue" and there was substantial evidence in the record to support the ALJ's findings. *Id.* at 5:24-28, 6:1-2.

Plaintiff argues in response that even a finding based on substantial evidence does not relieve the ALJ from giving a reason for disregarding the treating physician's report, as required by the general rules about weighing opinions from sources with a "treatment relationship." Pl.'s Reply 5:7-18. He also argues that ignoring Dr. Cabayan's report was not a harmless error since, if the assessment were credited, the ALJ could not have found that Plaintiff was capable of doing "light work." *Id.* at 6:9-14.

---

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20. C.F.R. § 416.967(b).

Generally, greater weight to a treating physician's opinion is afforded because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Sprague*, 812 F.2d at 1230). The Rule is codified in the regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations...When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion. 20 C.F.R. § 416.927(d)(2).

The treating physician's opinion is not, however, conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751 (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989)). The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. *Id.* (citation omitted). If the treating physician's medical opinion is uncontradicted, the opinion may be disregarded only if the ALJ found "clear and convincing" reasons for the rejection. If the opinion is contradicted, the ALJ must find "specific, legitimate reasons" supported by the record in rejecting the treater's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).[3]

Here, Dr. Cabayan's opinion is not inconsistent with that of the examining physician Dr. Salamacha or with treating physician, Dr. Smyth in some respects.. All three found a medical impairment that could explain his spinal pain. All concluded his standing, walking, and sitting for prolonged periods required breaks. However, their opinions differed in the frequency of the breaks needed. *See* Tr. 103 (Dr. Salamacha: stand/walk for 15-20 minutes, sit for 30-60 minutes); 220 (Dr.

---

[3] The ALJ does point to an evaluation that Dr. Cabayan made in April 2001, which assessed that Plaintiff would be precluded from heavy lifting based on his subjective complaints of occasional slight pain, stiffness and weather effects. (Tr. 31). This earlier assessment, however, does not address the issue of whether Plaintiff would be capable of performing "light work," which has a separate definition under the Social Security Regulations. *See* 20 C.F.R. § 416.967(b). More importantly, it addressed Plaintiff's capabilities at a different period in time.

Smyth: stand for 15 minutes, sit for 10 minutes); 294 (Dr. Cabayan: stand/walk for 10 minutes, sit for 10 minutes). They also differed in their assessment of lifting limitations: Dr. Salamacha - 20 pounds frequently (Tr. 103); Dr. Smyth - 10 pounds frequently, 20 pounds occasionally (Tr. 221); Dr. Cabayan - 10 pounds only occasionally (Tr. 294). These constitute material differences. Given the conflict between Dr. Salamacha and Dr. Cabayan, the "specific legitimate reasons" test rather than the "clear and convincing" standard applies.

Applying the appropriate standard, the Court finds that the ALJ's failure to address Dr. Cabayan's 2004 assessment fails to satisfy the "specific legitimate reasons" test. Plaintiff's counsel pointed to and the ALJ acknowledged at the hearing Dr. Cabayan's 2004 assessment which found pain and muscle spasm, significant limitation on motion of the spine, and which concluded that Plaintiff cannot lift more than 10 pounds occasionally and cannot stand/walk for a prolonged period of more than 10 minutes and cannot sit for a prolonged period of 10 minutes, and cannot work a full-time schedule alternating sitting and standing over eight hours. (Tr. 439-441). Yet, in his decision, the ALJ completely ignored Dr. Cabayan's assessment. The ALJ thus gave no "specific and legitimate reasons" supported by substantial evidence in the record for disregarding Dr. Cabayan's opinion as he was required to do so. *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Where the ALJ fails to provide such reasons, the treating physician's opinion must be accepted "as a matter of law." *Id. See also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988).

Defendant argues that the ALJ implicitly rejected Dr. Cabayan's opinion on the grounds that it contained findings that were similar the assessment made by Dr. Smyth. The ALJ rejected Dr. Smyth's assessment because it was based on Plaintiff's subjective complaints. However, there is no evidence from Dr. Cabayan's assessment form that his report was similarly premised on Plaintiff's own subjective complaints. *See* Tr. 292-294. Moreover, this Court's review must be based on the ALJ's reasoning in his written decision, not on testimony or evidence the ALJ *might* have but did not actually rely upon in reaching his decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (administrative order cannot be upheld except on grounds on which agency acted); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (stating that "we cannot affirm the decision of an

1  agency on a ground that the agency did not invoke in making its decision"). This is especially true
2  where as here any rejection by the ALJ of the treating physician's opinion must be explained and
3  supported by specific and legitimate reasons.

4  Defendant also argues that there is no evidence that Dr. Cabayan was Plaintiff's treating
5  physician at the time of the November 2004 exam. Def.'s Opp. 5:18-23. But it is undisputed that
6  Dr. Cabayan did treat the Plaintiff in 2001 (*see* Tr. 179-204 (2001 records)) and thus "has had an
7  ongoing treatment relationship" with Plaintiff and is therefore a "treating source" within the
8  meaning of §§ 404.1502. In fact, even the ALJ acknowledged Dr. Cabayan as a treater (*see* Tr. 31)
9  and there was no indication that the ALJ at anytime discredited Dr. Cabayan because of questions
10 about his treating status.

11 Accordingly, the ALJ erred in ignoring Dr. Cabayan's opinion. The question is what remedy
12 follows from the crediting, as a matter of law, Dr. Cabayan's opinion about Plaintiff's limitations.
13 The appropriateness of remand is in the discretion of the Court. *Harman v. Appel*, 211 F.3d 1172,
14 1175-78 (9th Cir. 2000); *Neumeyer v. Barnhart*, 2006 WL 39079 (C.D. Cal. 2006) at *10. Remand
15 is warranted where there are "outstanding issues that must be resolved before a determination of
16 disability can be made, and it is not clear from the record that the ALJ would be required to find the
17 claimant disabled if all the evidence were properly evaluated." *Id.* at *10.

18 In the case at bar, Dr. Belchick, the vocational expert, was asked whether the limitations
19 found by Dr. Cabayan in 2004 would preclude Plaintiff from working. Dr. Belchick testified he
20 could not do his past work (such as driving a cab) but could do alternative work such as working as
21 cashier, self-service parking lot or gas station. (Tr. 441). He conceded that if Plaintiff were rated at
22 a second grade level in dealing with numbers, that would be problematic. (Tr. 442). Moreover, if
23 Plaintiff had to take unscheduled breaks, that would preclude the claimant's employment. (Tr. 443-
24 44).

25 The question is whether the record, informed by the acceptance of Dr. Cabayan's opinion of
26 2004, would necessarily require the ALJ to conclude Plaintiff is not disabled. The Court notes the
27 introduction of Dr. Cabayan's opinion raises a number of questions. It is not clear what work, if
28 any, Plaintiff could perform. The vocational assessment turns on a number of additional factors that

cannot be determined as a matter of law, *e.g.* the level of Plaintiff's math, reading and writing ability, what kind of movement would be necessary to relieve the prolonged sitting or standing (*see* Tr. 423-27 (stretching and walking versus having to get up)), and the extent of lifting ability (*see* Tr. 432-38).

The record is unclear on these factors. Moreover, as noted below, the ALJ's conclusion on the amount of movement necessary to relieve Plaintiff's pain was not based on substantial evidence. Remand is therefore appropriate.

D.     Other Medical Evidence Regarding RFC

Plaintiff argues that the ALJ improperly discounted the medical opinions of a former treating physician, Dr. Smyth, and an examiner, Dr. Salamacha, both of whom provided reports regarding Plaintiff's functional limitations. Pl.'s Mot. for Summary Judgment 7:7-21. He further contends that the ALJ's reason for doing so -- because the reports were based on claimant's reports and therefore tainted with subjectivity -- does not constitute sufficient evidence to discredit these medical opinions. *Id.* Defendant, on the other hand, contends that Dr. Smyth's report was properly discredited since it was comprised primarily of quotations from Plaintiff. Def.'s Opp. 6:11-21. Defendant further asserts that the ALJ had properly weighed the opinions of both Drs. Smyth and Salamacha and his decision regarding the RFC was, contrary to Plaintiff's argument, primarily based on the report of Dr. Salamacha. *Id.* at 6:22:24. Plaintiff, on the other hand, disagrees that Dr. Salamacha's report was relied upon since the ALJ's ruling that the claimant could perform "light work;" Plaintiff assumes the definition that "light work" requires a person to be on his feet for six hours per day without more than usual breaks and that this conflicts with the examiner's assessment that Plaintiff could only stand and walk for a total of four hours per day. Pl.'s Reply 7:2-13.

Dr. Smyth's opinion and his July 2003 assessment (Tr. 217-23) could prove pivotal to the RFC evaluation in this case. As the ALJ stated at the hearing, "if Dr. Smyta's (*sic*) RFC is the RFC I accept, there is no residual functional capacity here at all." (Tr. 439). The vocational expert testified that if Plaintiff had to take repeated unscheduled breaks, he would not be employable. (Tr. 444). Dr. Smyth concluded Plaintiff would have to take two unscheduled breaks per hour. (Tr. 221). As noted above, Dr. Salamacha opined that Plaintiff could stand and walk for no more than 15

13

to 20 minutes at a time and would have to change positions while sitting every 30 to 60 minutes. (Tr. 32; 103).

There are two crucial points in the ALJ's decision in this regard.  First, he found that Plaintiff's back condition "requires that he change position somewhat frequently, but it appears that changing position would involve repositioning themselves while still seated or standing, not that it would involve him having to change his posture entirely for periods of time."  (Tr. 33).  Dr. Salamacha states Plaintiff "must be allowed to change positions every 30-60 minutes "while sitting."  (Tr. 103).  He does not state in the report what kind of change in position is required.  The administrative record before the ALJ is ambiguous.  Yet, as the vocational expert testified, it is quite important to the assessment of the kind of work, if any, Plaintiff can do.  (*See* Tr. 423-27 (discussion about ability to drive a cab or bus depending on extent of change in position needed)).  The ALJ's conclusion does not appear to be based on any substantial evidence other than his interpretation of Dr. Salamacha's report.  It is not supported by the other medical expert opinions of Drs. Smyth and Cabayan which found even more restrictive conditions.  The ALJ acknowledged Dr. Salamacha's report was the most specific.  (Tr. 32).  Moreover, it appears Dr. Salamacha was retained by Defendant or the State of California.  Given the importance of the precise nature of the functional limitations described upon Plaintiff's RFC and the ambiguity left by Dr. Salamacha's report, the ALJ should have sought clarification.  *See* 20 C.F.R. § 416.912(f).[4]  Lacking substantial evidence to support the ALJ's conclusion on this issue, remand is further warranted on this ground.

---

[4] The Court also concludes that contrary to Plaintiff's argument, the ALJ relied upon, rather than disregarded, the medical report of Dr. Salamacha in determining that Plaintiff was capable of performing "light work."  In his decision, the ALJ notes that Dr. Salamacha's report is "the most specific" and presents in detail the various findings that were made by the physician and on which he, later, relied to determine the RFC for "light work."  (Tr. 31-32).  Plaintiff's assertion that the ALJ must have ignored Dr. Salamacha's report since those findings are inconsistent with the requirements of "light work" is based on his assumption that "light work" is defined as requiring Plaintiff to be on his feet for six hours per day without any usual breaks.  Plaintiff cites no authority or record evidence for this assumption.  Furthermore, Plaintiff's proposed definition of "light work" is inconsistent with the regulations' definition of "the functional capacity to perform a full range of light work" which includes sedentary work and "provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work."  *See* 20 C.F.R. Part 404 Appx. 2, § 202.00(a)-(b).  Dr. Salamacha's findings regarding Plaintiff's functional limitations fall within the parameters of "light work" as defined under 20 C.F.R. § 416.967(b).  *See* n.1, *supra*.

14

Second, the ALJ rejected Dr. Smyth's opinion which concluded, *inter alia*, that Plaintiff would have to take two unscheduled breaks every hour and had to walk for 10 to 15 minutes every 30 minutes. (Tr. 220-21). The ALJ rejected Dr. Smyth's opinion because the functional limitations were based on "perceived pain, not otherwise. The medical reports are essentially based on the claimant's reports to the assessors, so these reports are all tainted with the same subjectivity I found in his testimony," which the ALJ disbelieved. (Tr. 32). The ALJ specifically refused to credit Dr. Smyth's report because "it is primarily a series of quotations from the claimant." *Id.* "These are not the opinions of the treating physician, these are reports of an interview with the claimant and therefore are not entitled to the weight normally given to a treating source report." *Id.*

Again the question is raised whether Dr. Smyth's opinion, particularly about Plaintiff's need for unscheduled breaks, is in conflict with that of any other examining physician. Absent a conflict, the ALJ would have to have "clear and convincing" reasons to disregard the treating physician's opinion. If there were a conflict, the ALJ must have "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, *supra*, 81 F.3d at 830-31.

While there does not appear to be a substantial conflict between Dr. Smyth and Dr. Salamacha over the limitations on prolonged standing, walking and sitting, there appears to be a conflict on the pivotal question whether Plaintiff needs to take two unscheduled breaks per hour. Nothing in Dr. Salamacha's examination suggests such a limitation. Indeed, Dr. Salamacha states the Plaintiff "has been vocationally rehabilitated to be a limousine driver which is an appropriate choice for this gentleman. He should be encouraged to pursue this as an employment option." (Tr. 103). Having to take frequent unscheduled breaks is not consistent with Dr. Salamacha's conclusion that Plaintiff was a good candidate for vocational rehabilitation. Given the conflict with Dr. Salamacha, the "specific and legitimate reasons" standard applies to Dr. Smyth's opinion.

In this regard, the ALJ is not obligated to accept any medical opinion, even that of a treating physician, if it is brief, conclusory, and unsupported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, an ALJ may discredit a treating physician's assessment because it lacked objective clinical findings and is based primarily on claimant's

subjective complaints and conflicts with other medical assessments. *Id.* at 1020. *Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The Court finds the ALJ provided sufficient specific and legitimate reasons to discount Dr. Smyth's opinion that Plaintiff had to take two unscheduled breaks per hour. As stated by the ALJ, a great deal of his report consisted of a series of quotations that were taken from Plaintiff. These direct quotations were indicated by the doctor through the use of quotation marks and phrases such as "patient states," "varies" and "patient statement." (Tr. 218-23). As such, the report was primarily based on his subjective complaints. As discussed below, the ALJ found Plaintiff's complaints were exaggerated. Moreover, Dr. Smyth's conclusion lacked objective clinical findings. Nothing in the July 2003 report or the previous treatment records of Dr. Smyth (Tr. 205-16) indicates any clinical tests or objective evidence that Plaintiff could not work without taking frequent unscheduled breaks (as opposed to having to change positions). The only MRI taken of Plaintiff proved normal. (Tr. 175). Dr. Smyth's conclusion conflicts with the more modest limitations found by Dr. Salamacha and Dr. Salamacha's conclusion that a limousine driver position would be suitable for Plaintiff.

The Court finds *Matney* and *Batson* persuasive. In those cases, as here, the subject reports were brief, were based in large part on subjective complaints of the claimant, lacked objective clinical evidence in support, and conflicted with other medical assessment. Here, the ALJ had specific and legitimate reasons to reject Dr. Smyth's conclusion that Plaintiff was required to take two unscheduled breaks per hour.

E.   Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ improperly discredited Plaintiff's reports about his pain symptoms and functional limitations without clear and convincing reasons. Pl.'s Mot. for Summary Judgment 8:5-28, 9:1-28, 10:1-2. Defendant argues that the ALJ is not required to accept Plaintiff's subjective complaints without question, especially since the ALJ found there were problems with claimant's credibility as shown by lack of truthfulness in presenting the record and inconsistencies in his testimony. Def.'s Opp. 7:13-23, 8:9-18.

In determining subjective pain testimony, the ALJ must determine if Plaintiff properly presented objective medical evidence of an underlying impairment "which could reasonably be

1 expected to provide the pain or other symptoms alleged." *Bunnell v. Sullivan* 947 F.2d 341, 344 (9th

2 Cir. 1991) (*en banc*) (reaffirming *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  If Plaintiff

3 meets this test, and there is no evidence of "malingering," the ALJ must make specific findings

4 stating clear and convincing reasons for rejecting subjective pain testimony.  *See Reddick*, 157 F.3d

5 at 722, *Lester v. Chater*, 81 F.3d at 834.  Furthermore, if the ALJ finds that the claimant's testimony

6 as to the severity of impairments is unreliable, the ALJ must make a credibility determination with

7 findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

8 claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002), (citing *Bunnell*,

9 947 F.2d at 345-46).

10 The ALJ may consider at least the following factors when weighing the claimant's

11 credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony

12 or between testimony and conduct, [claimant's] daily activities, work record, and testimony from

13 physicians and third parties concerning the nature, severity, and effect of the symptoms of which

14 [claimant] complains.  *Id.* at 959 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

15 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, then the

16 reviewing court may not engage in second-guessing the ALJ.  *Id.* at 959 (citing *Morgan v.*

17 *Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

18 The Court finds that, although Plaintiff has presented objective medical evidence that his

19 impairments could reasonably be expected to produce some pain (thus meeting the first part of the

20 *Cotton* test), the evidence does not suggest that the pain was so extraordinary so as to impose the

21 limitation that Plaintiff must walk for 10 to 15 minutes every 30 minutes, and must take two

22 unscheduled breaks per hour.  His claim is not consistent with Dr. Salamacha's report which

23 diagnosed musculoskeletal thoracolumbar pain, but found Plaintiff could perform light work, such as

24 driving a limousine.  (Tr. 103).

25 In addition, the ALJ gave specific reasons to discount Plaintiff's testimony regarding the

26 severity of his impairments.  The ALJ found that Plaintiff's credibility was impaired for several

27 reasons.  First, he found that Plaintiff had not been truthful since he had excluded data from the

28 record regarding eleven years of earnings he acquired as a taxi driver and also withheld information

17

about a car accident claim in April 2001, an incident which may have contributed to his impairments. (Tr. 29, 33).

Second, the ALJ found that there were inconsistencies in claimant's testimony and between claimant's testimony and the record. For example, the ALJ noted that, at the first hearing, Plaintiff had testified that he could not sit because he had hemorrhoids, but also testified that he sat around the house four to five days a week. (Tr. 33). Plaintiff testified he had been in special classes at school but said "No" on a form which asked if he attended special education classes. (Tr. 28). The ALJ also pointed to the fact that Plaintiff had stated he could not sleep, yet also reported he slept all day and poorly at night. Although Plaintiff testified he saw a therapist once a week, the records do not substantiate weekly appointments. (Tr. 29). The ALJ also noted that despite the fact that Plaintiff stated he spent his days by himself, there was evidence from his testimony that he interacted with other people since, for example, he was able to find shelter and succor with family and friends. (Tr. 30).

Third, the ALJ relied on observations he made of Plaintiff's functioning capabilities during their interactions throughout the hearings. Having observed Plaintiff's ability to understand and answer questions promptly and capability to remain focused, he concluded that Plaintiff did not have trouble sitting and standing, paying attention, or speaking. (Tr. 32-33). It is not improper for the ALJ to use what he/she observes during the hearings for credibility determinations. *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (holding that an ALJ does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's claim; such observations are credibility determinations and are entitled to considerable weight).

The Court concludes the ALJ stated clear and convincing reasons for discrediting Plaintiff's testimony about the degree of his pain. These findings were specific and demonstrate that the ALJ did not arbitrarily discredit Plaintiff's testimony regarding his symptoms and functional limitations.

## IV.  CONCLUSION

Accordingly, the ALJ did not err in refusing to credit Dr. Smyth's testimony about Plaintiff's limitations and residual functional capacity, in particular Dr. Smyth's conclusion that Plaintiff had to take 10 to 15 minute breaks every 30 minutes and had to take two unscheduled breaks per hour. The

ALJ also did not err in discrediting Plaintiff's testimony as to the extent of his pain and limitations caused thereby.  However, the ALJ did err in rejecting without stating reasons Dr. Cabayan's assessment limiting Plaintiff's prolonged standing/walking and sitting to 10 minutes at a time and his lifting to 10 pounds occasionally.  The ALJ also erred in failing to determine, based on Dr. Salamacha's assessment, what change in position is required by Plaintiff while sitting and standing/walking.

The Court concludes that remand is appropriate here so that the ALJ can address these issues.  Once these factual determinations are properly assessed consistent with this order, the ALJ should reassess the fourth and fifth steps of the five step sequential process.  It would be appropriate for the ALJ to obtain additional information from Dr. Salamacha and vocation expert, Dr. Belchick, in carrying out this reassessment since Dr. Belchick did not reach a clear conclusion about Plaintiff's ability to work given all the potential parameters.  20 C.F.R. § 416.916(f).

This order disposes of Docket Nos. 13 and 16.

IT IS SO ORDERED.

Dated:  July 7, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

19